UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COREY PRESTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:22-CV-322-HAB |
| J. FRETZ, et al., | |
| Defendants. | |

OPINION AND ORDER

Corey Preston, a prisoner without a lawyer, is proceeding in this case against police officers Joshua Fretz, Jon Yoder, Zachary Zimmerman, Mack Innis, Cory Troyer, and Zachary Gould "in their individual capacities for compensatory and punitive damages for subjecting him to excessive force after he was pulled over in Fort Wayne, Indiana on June 19, 2022, in violation of the Fourth Amendment[.]" ECF 27 at 3. The defendants moved for summary judgment. ECF 81. Preston filed a response, and the defendants filed a reply. ECF 86, 88. The summary judgment motion is now fully briefed and ripe for ruling.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law

determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

Excessive-force claims that occur during the course of an arrest or apprehension of a suspect "are governed by the Fourth Amendment's 'reasonableness' standard, which turns on the totality of the circumstances confronting [the officers] viewed from the perspective 'of a reasonable officer on the scene . . . .'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 396 (1989)). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Id.* (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)). In analyzing these claims, the court must "consider the facts and circumstances of each particular case, including the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (internal quotation marks and citations omitted). An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009).

The defendants provide their own affidavits and bodycam footage, which show the following facts: On June 19, 2022, around 2:09 a.m., Officer Joshua Fretz received a report of a disturbance at a gas station caused by a man on a moped armed with a knife. ECF 81-1 at 1. Officer Fretz arrived in his police vehicle and observed the suspect, later identified as Preston, exit the gas station parking lot on his moped and drive down the street. *Id.* at 2. Officer Fretz and other police officers followed Preston with their squad car lights activated. *Id.* Preston stopped the moped on the sidewalk and began to walk to the front of Officer Fretz' vehicle. *Id.* The officers present were aware Preston was said to be armed with a knife and immediately started giving him commands. *Id.* Preston was instructed numerous times to place his hands in the air and turn around, but did not comply with these orders. *Id.* Officer Fretz then drew his taser and pointed it at Preston, and warned Preston he would use his taser if he didn't comply with their commands. *Id.* Preston repeatedly stated "why" and would not comply. *Id.* Preston then began making growling noises and took what appeared to be a fighting stance by balling his fists and pointing them toward the ground. *Id.* Officer Fretz deployed his

3

taser, but it had no effect on Preston. *Id.* Officer Mack Innis observed the taser have no effect on Preston, so he tackled Preston to the ground and attempted to handcuff him. ECF 81-2 at 2. Preston resisted by kicking his legs and swinging his arms, but Officer Innis and other officers were eventually able to gain control over him and place him in handcuffs. *Id.* at 2-3.

Once Preston was secured in handcuffs, he was searched and a knife was recovered from his pants pocket. ECF 81-3 at 2.[1] He was then placed in Officer Zachary Zimmerman's squad car. *Id.* at 3. Medics arrived and offered treatment to Preston, but Preston told them to "fuck off." *Id.* Officer Zimmerman told Preston he'd be transported to the hospital, and Preston leaned back and began kicking the inside of Officer Zimmerman's squad car. *Id.* Officer Zimmerman transferred Preston to Officer Jon Yoder's squad car because it contained a half cage with less room for Preston to thrash around. *Id.* While transferring Preston to Officer Yoder's squad car, Preston became "dead weight" and forced the officers to drag him. *Id.* Preston refused to pick himself up and was warned he'd be pepper sprayed if he refused to comply. *Id.* at 3-4. Preston continued to refuse and pepper spray was applied, which had the desired effect and caused him to comply. *Id.* at 4. He was then helped up and placed into Officer Yoder's squad car. *Id.* Preston continued to thrash in Officer Yoder's squad car on the way to the hospital. *Id.* Once he arrived at the hospital, Preston refused to exit the squad car so

---

[1] Preston disputes that a knife was found in his possession. ECF 86 at 2. Construing the facts in the light most favorable to Preston, the court accepts as true that no knife was found in his possession. But this fact is not material, as it is undisputed the officers reasonably believed Preston was armed with a knife at the time of the interaction.

4

Officer Zimmerman had to drag him out. *Id.* Preston continued to be "dead weight" and fell to the ground. *Id.* Preston continued to thrash around and spout profanities, so he was placed on a gurney in the hospital and handcuffed to the gurney. *Id.* at 5. Preston continued to thrash on the gurney, so hospital staff tried to sedate him which was only mildly effective. *Id.* A doctor informed Officer Zimmerman he believed Preston was under the influence of amphetamines which contributed to his lack of response to the sedation, so the doctor determined to put Preston out and intubate him. *Id.*

The defendants argue summary judgment is warranted in their favor because they used a reasonable amount of force to effectuate Preston's arrest in light of the volatile and unpredictable situation he created. ECF 83 at 2-7. In his response, Preston doesn't dispute any of the defendants' evidence regarding the amount of force they used on June 19. ECF 86. The court therefore accepts that evidence as undisputed. Instead, Preston argues the defendants' use of force was excessive because he was tased, pepper sprayed, tackled to the ground, and strapped to a bed despite the fact that he "got off the moped without actively resisting or attempting to evade arrest by flight." ECF 86 at 1-4.

Here, no reasonable jury could conclude the defendants violated Preston's Fourth Amendment rights, as the undisputed evidence shows they used only as much force as was reasonably necessary to effectuate his arrest. *See Gonzalez*, 578 F.3d at 539. At the outset, Preston argues he did not "actively" resist arrest after climbing off his moped. ECF 86 at 1. But he doesn't dispute he approached Officer Fretz's squad car,

5

refused numerous orders to place his hands in the air and turn around, and instead dropped his fists and began making growling noises.[2] This shows Preston actively resisted his arrest by declining to follow orders while acting in a belligerent manner. *See Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) ("declining to follow instructions while acting in a belligerent manner" can amount to active resistance that would make use of a taser objectively reasonable). Because it is undisputed the defendants only tased and tackled Preston after he refused numerous orders to place his hands in the air and turn around and instead dropped his fists and took what appeared to be a fighting stance, no reasonable jury could conclude this force was excessive, particularly where the defendants had been informed Preston had a knife and warned him he would be tased if he did not comply. *See Dockery*, 911 F.3d at 467; *Forrest v. Prine*, 620 F.3d 739, 745 (7th Cir. 2010) (officer's use of a taser against detainee who paced in his cell, clenched his fists, and refused orders was permissible where detainee had been warned his noncompliance would result in tasing). Similarly, it is undisputed the defendants only pepper sprayed Preston after he refused orders to get off the ground so he could be transported to a squad car, and Preston provides no evidence the defendants used more pepper spray than was necessary to gain his compliance. *See Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011) (noting it is "often ... reasonable to use pepper spray against a suspect who is physically resisting arrest"); *Padula v. Leimbach*, 656 F.3d 595,

---

[2] To the extent Preston does attempt to dispute these facts, they are corroborated by the defendants' bodycam footage. *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (holding that when "the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape").

6

598–99, 603–604 (7th Cir. 2011) (finding it was not objectively unreasonable for officers to spray mace into the face of a seriously intoxicated (and possibly unconscious) person who "did not cooperate with the officers' repeated requests to step out of his car"); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital."). Lastly, it is undisputed the defendants were forced to "drag" Preston to the squad car and hospital because he became dead weight, and had to handcuff him to a gurney because he repeatedly thrashed his body.[3] Because Preston forced the defendants to exert this force to safely effectuate his arrest, no reasonable jury could conclude it violated his Fourth Amendment rights. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot be permitted to "engineer" a constitutional violation).

Thus, considering the totality of the circumstances, including that Preston repeatedly refused orders from the defendants and the defendants were informed Preston was armed with a knife, no reasonable jury could conclude the defendants used greater force than necessary to effectuate Preston's arrest. Summary judgment is therefore warranted in favor of the defendants.

---

[3] Preston argues he "didn't see any video" of him in the squad car or hospital. ECF 86 at 2-3. He also wrote the court a letter requesting to see these videos. ECF 89. Defense counsel provides evidence Preston has been sent these videos three times. ECF 88 at 6. Regardless, Preston doesn't dispute the defendants' attestations that he thrashed in the squad car and hospital, and doesn't explain how allowing him to view these videos (which support the defendants' attestations) would have any impact on this case. *See* ECF 78 (showing Preston thrashing in the back of Officer Zimmerman's and Officer Yoder's squad cars).

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 81); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Corey Preston and to close this case.

SO ORDERED on August 15, 2024.

                                         s/ *Holly A. Brady*
                                         CHIEF JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT